IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ISAIAH MARKHAM SANDERS, | CASE NO. 5:21-CV-01729-JRK |
| Petitioner, | JUDGE JAMES R. KNEPP II |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN DOUGLAS FENDER, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On August 31, 2021, Petitioner Isaiah Markham Sanders, a prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction over the petition under § 2254(a). On February 15, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Feb. 15, 2022).[1] On December 20, 2021, Respondent Douglas Fender, in his official capacity as Warden of the Lake Erie Correctional Institution (hereinafter, the State), moved to dismiss the petition as untimely and, alternatively, because the claim is non-cognizable. (ECF #8). Mr. Sanders did not respond to the State's motion.

---

[1] This matter was initially referred to then-Magistrate Judge David A. Ruiz on September 14, 2021; that referral was withdrawn on February 15, 2022 following Judge Ruiz's elevation to District Judge pursuant to General Order 2022-03.

1

For the reasons discussed below, I recommend the District Court **DISMISS** the petition as untimely.

PROCEDURAL HISTORY

**A.      State court factual findings**

The Ohio Court of Appeals, Fifth Appellate District, made the following factual findings on direct appeal. These findings are presumed correct unless Mr. Sanders rebuts that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

> {¶3} On January 26, 2017, the Stark County Grand Jury indicted Appellant, Isaiah Sanders, on two counts of murder, a violation of R.C. § 2903.02(8), two counts of felonious assault, a violation of R.C. § 2903.11(A)(2), Attempted Kidnapping, a violation of R.C. § 2905.01(A)(2) and tampering with evidence, a violation of R.C. § 2921.12(A)(1). The counts contained five firearm specifications.

> {¶4} On November 28, 2017, a jury trial commenced in this matter. Six witnesses testified on behalf of the state. The jury was presented with the following testimony and evidence:

> {¶5} Appellant Isaiah Sanders had moved to Akron, Ohio from Atlanta, Georgia to live with his aunt, a school teacher. He made friends with Eryc Higgins, whom he described as his only friend, his best friend, and his "brother." He ended up moving in with Higgins and his sister, Alysen McNabb.

> {¶6} In May of 2016, while working for Next to New Appliances, Appellant Isaiah Sanders delivered a used refrigerator to the home of Brooke Clemons' mother. There, he met Clemons and struck up a relationship which would eventually become a romantic relationship. Clemons complained to Appellant that the father of her three young children, Joshua Weatherspoon, was not taking care of her and her children. According to her, he didn't show up when she asked to deliver diapers and cigarettes. Clemons wanted Sanders to beat Weatherspoon up as retaliation for his neglectful behavior, but she did not want to be involved.

> {¶7} Sanders devised a scheme to teach Weatherspoon a lesson and proposed it to Higgins. Clemons would lure Weatherspoon to the home she shared with her three

2

young children by telling him she needed diapers, Sanders and Higgins would be there, kidnap Weatherspoon and take him to a place where they could "whoop" him.

{¶8} On August 29, 2016, Sanders and Higgins hitched a ride to Canton to the home of Clemons. That night, they went to Walmart. They used Clemons' food stamp card to buy Pop-tarts and Pepsi and stole zip-ties and gloves. The plan was to use the zip-ties to tie up Clemons so she could pretend to be an innocent victim, kidnap Weatherspoon and take him away from the Canton area, "beat him up, leave him there, let him go figure it out."

{¶9} Sanders admitted that he knew there were guns in the Clemons' home left there by Weatherspoon. There was a loaded Beretta M9 on the table in the living room/dining room and another in the closet.

{¶10} On the night of August 29, 2016, Sanders and Higgins waited for Weatherspoon to arrive at Clemons' house but fell asleep sometime after midnight when he failed to show.

{¶11} Around 5:00 a.m. on August 30, 2016, Sanders woke up to the sound of the muffler from Weatherspoon's Lexus in the driveway of Clemons' home. He saw Clemons use the stolen zip-ties to tie her hands up. Things started happening fast. He heard some scuffling and saw that Weatherspoon had Higgins in a chokehold in the kitchen and Weatherspoon's right hand in his pocket. Sanders went to the closet and grabbed the Beretta from the shelf, pointed the gun at the struggling men and pulled the trigger five times. Sanders saw the two men fall to the kitchen floor together. Sanders went to the body of Higgins and turned him over, checked for a pulse and finding none, knew he was dead. Sanders stated that he then took both guns with him and an iPhone and fled the scene. He stated that he initially fled to Alabama and then to Atlanta.

{¶12} Meanwhile, Clemons ran to the home of the neighbor crying hysterically, with her hands still tied with the zip-ties. The neighbor cut off the zip-ties and accompanied her back to the home while his mother-in-law called 911.

{¶13} Canton Police Officer David Samuels was working the day shift that day and arrived at the Clemons' home on Midway Avenue around 8:57 a.m. Outside, he saw Clemons and the neighbor talking and tried to find out if there was an active shooter inside. Finding at least two small children inside, he chose to not wait for backup. He looked in the front door, holstered his sidearm and removed the children; one in an infant seat and one on the couch. When backup arrived, the officers entered

the home, guns drawn, searching for an active shooter. The officers found two bodies next to each other in the kitchen area, dead from gunshot wounds.

{¶14} Canton City Detective Terry Monter was dispatched to the scene. Joshua Weatherspoon was quickly identified as one of the victims. His Lexus was parked in the driveway. A firearm was found in the Lexus, but no firearm was found on the body of Weatherspoon. The other deceased male was not known and had no identification on him. A black and white driver's license was found at the scene but the photo was blurry. It contained the name Isaiah Sanders and was issued from Georgia.

{¶15} Det. Monter made contact with Atlanta police who sent a photo of Sanders. The picture did not match the unidentified deceased male. Later, however, Monter was able to learn the name of the unidentified decedent through phone records of Sanders, Akron relatives, and an interview with Clemons, who told Monter she heard the shooter yell, "Eryc, Eryc, No" after the murder. The second male was identified as Eryc Higgins. Detectives ultimately learned that Sanders was friends with Higgins.

{¶16} By tracing telephone calls, Det. Monter was able to locate Sanders in Atlanta, Georgia. A warrant was issued for Sanders' arrest and in December, 2016, Sanders was picked up in Atlanta and brought to Stark County.

{¶17} On December 20, 2016, after being given Miranda warnings, Appellant Sanders gave an hour and fifteen minute interview to Det. Monter. The redacted videotaped interview was played for the jury. During the interview, Sanders admitted to the killings.

{¶18} The body camera of the first responding officer was also played for the jury.

{¶19} At the close of the State's case, Appellant made a motion for judgment of acquittal, which was overruled. Appellant then testified on his own behalf.

{¶20} Appellant requested jury instructions on Accident, Self-Defense, Defense of another, involuntary manslaughter and voluntary manslaughter. The trial court declined to give any of those instructions finding that the evidence presented did not support them.

{¶21} Following approximately three hours of deliberations, the jury returned with a verdict of guilty to all of the charges in the indictment.

4

(ECF #8-1 at PageID 179-83; *see also State v. Sanders*, No. 2018 CA 00004, 2019 WL 126877, at *1-3 (Ohio Ct. App. Jan. 7, 2019) (citations omitted), *appeal not allowed*, 121 N.E.3d 409 (Ohio 2019)).

**B.      Direct appeal**

On January 9, 2018, Mr. Sanders filed a timely notice of appeal through new counsel to the Fifth District. (ECF #8-1 at PageID 96). Mr. Sanders raised four assignments of error in his merit brief:

1.      The trial court erred by not instructing the jury on the lesser offense of involuntary manslaughter as requested by appellant.

2.      The trial court erred by not instructing the jury on the lesser offense of voluntary manslaughter as requested by appellant.

3.      Appellant's conviction for tampering with evidence as set forth in count six of the indictment was against the manifest weight of the evidence and not supported by sufficient evidence.

4.      Appellant's convictions for attempted kidnaping as set forth in count five of the indictment was against the manifest weight of the evidence and not supported by sufficient evidence.

(*Id.* at PageID 111). The State filed a merit brief in response. (*Id.* at PageID 151-76). On January 7, 2019, the Fifth District overruled all four assignments of error and affirmed the trial court's judgment. (*Id.* at PageID 178, 196).

On February 15, 2019, Mr. Sanders filed *pro se* a notice of appeal with the Supreme Court of Ohio. (*Id.* at PageID 197). In his memorandum in support of jurisdiction, Mr. Sanders set forth one proposition of law: "The Court of Appeals abused its discretion when it failed to find that appellant was entitled to a lesser included offense instruction in violation of his 6th and 14th Amendment constitutional rights of the United States Constitution and Article 1, Section 1, 5,

and 16 of the Ohio Constitution." (*Id.* at PageID 211). The State opposed jurisdiction. (*Id.* at

PageID 237-52). On May 1, 2019, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID

253).

**C.      Application to reopen direct appeal under Ohio Appellate Rule 26(B)**

Meanwhile, on April 4, 2019, Mr. Sanders filed *pro se* an application to reopen his direct

appeal that asserted three claims of ineffective assistance of counsel:

> 1.      Mr. Sanders's appellate counsel was ineffective because he failed to raise on
> direct appeal a claim of ineffective assistance of trial counsel when Mr.
> Sanders's trial counsel was ineffective when he put forth a statutorily barred
> defense that hindered Mr. Sanders's right to a fair trial and due process of
> law.
>
> 2.      Mr. Sanders's appellate counsel was ineffective because he failed to apply the
> facts of Mr. Sanders's case to the "against the manifest weight of the evidence"
> claim he raised in regards to Mr. Sanders's Tampering with Evidence and
> Attempted Kidnapping convictions.
>
> 3.      Whether there was sufficient evidence to convict Mr. Sanders of Felony
> Murder in the death of Eryc Higgins where there was no cause or explanation
> for his death other than Mr. Sanders's testimony that it was an accident.

(ECF #8-1 at PageID 257-59). On June 26, 2019, the Fifth District denied Mr. Sanders's

application. (*Id.* at PageID 275-77). On July 5, 2019, Mr. Sanders filed *pro se* a motion for

reconsideration of his application to reopen. (*Id.* at PageID 278). On August 13, 2019, the Fifth

District denied reconsideration. (*Id.* at PageID 283). Mr. Sanders did not further appeal that

decision to the Supreme Court of Ohio.

FEDERAL HABEAS PETITION

Over two years later, on August 31, 2021, Mr. Sanders signed his habeas petition and

placed it in the prison mailing system. (ECF #1). Mr. Sanders raises one ground for relief:

>The Court of Appeals abused its discretion when it failed to find that [Mr. Sanders] was entitled to a lesser included offense instruction in violation of his 6th and 14th Amendment Constitutional Rights of the United States Constitution and Article 1, Sections 1, 5, and 16 of the Ohio Constitution.

(*Id.* at PageID 5).

### DISCUSSION AND ANALYSIS

The State argues Mr. Sanders's petition is time-barred under the Antiterrorism and Effective Death Penalty Act's (AEDPA) statute of limitations and thus should be dismissed. (ECF #8 at PageID 47). In the alternative, the State argues Mr. Sanders's claim for relief is not cognizable. (*Id.*). Mr. Sanders did not respond to the State's motion.

**A.      Mr. Sanders's petition is time-barred by the AEDPA statute of limitations.**

AEDPA establishes a one-year statute of limitations applicable to applications for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d); *see also Duncan v. Walker*, 533 U.S. 167, 179 (2001) (noting that the one-year limitations period in § 2244(d)(1) meets the interest in the finality of state court judgments). The limitations period is not jurisdictional; rather, it is an affirmative defense the responding party must raise in its first responsive pleading. *Day v. McDonough*, 547 U.S. 198, 205 (2006); *see also Scott v. Collins*, 286 F.3d 923, 927-28 (6th Cir. 2002). Though not jurisdictional, when the State asserts the limitations period and the petition is late, the district court should dismiss the case. *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *see also McCray v. Vasbinder*, 499 F.3d 568, 577 (6th Cir. 2007) (reversing order granting habeas relief because the "gateway requirements" for excusing a time-barred petition—*i.e.*, equitable tolling and actual innocence—had not been satisfied).

AEDPA's statute of limitations period runs from the latest of four dates:

(A)    the date on which the judgment became final by the conclusion of direct
       review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State
       action in violation of the Constitution or laws of the United States is
       removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by
       the Supreme Court, if the right has been newly recognized by the Supreme
       Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented
       could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's strict filing deadlines promote the finality of convictions and

curb dilatory tactics. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). A state-court judgment

becomes "final" on direct review for purposes of § 2241(d)(1)(A) when the time for pursuing direct

review in state court or the United States Supreme Court expires. *Gonzalez v. Thaler*, 565 U.S. 134,

150 (2012). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled while a properly filed

application for state post-conviction relief or other collateral review with respect to the pertinent

judgment or claim remains pending.

Although the Supreme Court of Ohio denied jurisdiction over Mr. Sanders's direct appeal

on May 1, 2019, his conviction did not become final on that day. Before the Supreme Court of

Ohio denied jurisdiction, Mr. Sanders filed an application with the Fifth District to reopen his

appeal on April 4, 2019. The Fifth District did not rule on his application to reopen until June 26,

2019, almost two months after the Supreme Court of Ohio denied jurisdiction. Thus, Mr. Sanders

is entitled to 57 days tolling while his application to reopen with the Fifth District was pending.

On July 5, 2019, nine days after denial of his application to reopen, Mr. Sanders filed a

motion for reconsideration, again tolling the statute of limitations. On August 13, 2019, the Fifth

District denied reconsideration. Thus, for that period, Mr. Sanders is entitled to 39 days tolling while the motion for reconsideration of the application for reopening was pending.

Despite credit for a total of 96 days of tolling, the deadline for Mr. Sanders's petition passed before he filed it. Because the application for reopening was pending when the Supreme Court of Ohio denied jurisdiction, Mr. Sanders's conviction became final on June 26, 2019, when the Fifth District denied the application. The limitations period thus began the following day on June 27, 2019. Nine days later, the limitations period was tolled when Mr. Sanders filed his motion for reconsideration. The limitations period began to run again on August 13, 2019, with nine days having already passed. Thus, with 96 days tolled, the filing window for Mr. Sanders's habeas petition closed August 4, 2020, well over a year before Mr. Sanders filed his petition on August 31, 2021.

AEDPA's statute of limitations is not "an inflexible rule requiring dismissal whenever its clock has run" and is "subject to equitable tolling." *Holland v. Florida*, 560 U.S. 631, 645-46, 649 (2010) (internal quotations omitted). A habeas petitioner is entitled to equitable tolling if he shows (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Id.* at 649. Mr. Sanders does not make any argument that equitable tolling applies, which he is required to do to receive equitable tolling consideration. *See id.* Rather, Mr. Sanders "acknowledges the standards and procedures. . . regarding Procedural Default" and asserts that his petition is timely, despite the limitations period having closed a year prior. (ECF#1-2 at PageID 19). Furthermore, Mr. Sanders does not articulate any reasonable circumstances outside his control that could explain why he failed to submit his petition earlier. A petitioner's *pro se* status and lack of knowledge of the law are not sufficient to constitute

9

extraordinary circumstances to excuse a late filing. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012). Even if those circumstances could justify equitable tolling, Mr. Sanders filed a timely application for reopening and a timely motion for reconsideration in state court, suggesting that he can adhere to procedural deadlines despite his *pro se* status.

Further, Mr. Sanders is not entitled to equitable tolling under the actual innocence exception. Under this exception, a petitioner may receive equitable tolling by demonstrating a valid claim of actual innocence, "so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 F. App'x 606, 609 (6th Cir. 2012). Valid claims of actual innocence require "new reliable evidence—whether it be exculpatory or scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The new evidence must show "it is more likely than not that no reasonable juror would have convicted the petitioner." *Id.* at 329.

Mr. Sanders does not assert he was actually innocent of the homicides he was convicted of but rather argues he should have been convicted of lesser degrees of homicide. This is not a sufficient claim of actual innocence. *See Harvey v. Jones*, 179 F. App'x 294, 298-99 (6th Cir.), *cert. denied*, 549 U.S. 925 (2006) (noting that "actual innocence" means factual innocence, not legal innocence); *see also Rozzelle v. Sec'y, Florida Dept. of Corr.*, 672 F.3d 1000, 1015 (11th Cir. 2012), *cert. denied*, 568 U.S. 914 (2012) (holding actual innocence gateway to an otherwise procedurally-defaulted or time-barred petition for habeas relief did not extend to the petitioner who committed the killing and whose alleged actual innocence of a noncapital homicide conviction was premised on being guilty of a lesser degree of homicide). Even if Mr. Sanders claimed he was factually

10

innocent of the homicides he was convicted of, he does not advance any new evidence that was

not considered in the state-court proceedings that demonstrates a lack of confidence in the

outcome. *See Schlup*, 513 U.S. at 324.

Because Mr. Sanders's petition was filed over a year after the applicable limitations period

expired on August 4, 2020 and Mr. Sanders has not demonstrated entitlement to equitable tolling,

I conclude Mr. Sanders's petition is untimely. Therefore, I recommend the District Court

**DISMISS** the petition as time-bared.

**B.      If not time-barred, then Mr. Sanders's petition presents a claim not cognizable in federal habeas corpus review.**

Even if Mr. Sanders's petition was timely, the single ground for relief it presents is not

cognizable in federal habeas corpus review. Mr. Sanders argues as follows:

> **GROUND ONE**: The court of appeals abused its discretion when it failed to find that Appellant was entitled to lesser included offense instruction in violation of his 6th and 14th Amendment constitutional rights of the United States Constitution and Article I, Sections 1, 5 and 16 of the Ohio Constitution.

(ECF #1, at PageID 5). Mr. Sanders's argument focuses on whether the state courts instructed the

jury properly under Ohio law.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions. In conducting habeas review, a federal court is limited to deciding whether

a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*,

502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21

(1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.")

(citation omitted). "[F]ederal habeas corpus relief does not lie for errors of state law," including the

state court's instruction of a jury on the state's applicable law. *See, e.g., Pulley v. Harris*, 465 U.S. 37, 41 (1984).

"Because federal habeas corpus relief does not lie for errors of state law," federal courts "may grant the writ based on errors in state jury instructions only in extraordinary cases." *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007) (quotation omitted). "To warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. The burden is even greater than that required to demonstrate plain error on appeal.'" *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001) (quoting *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)). Thus, the question on federal habeas review is not whether the state trial court failed to cure a particular ailing jury instruction, but "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Daniels*, 501 F.3d at 741 (quotation omitted).

Mr. Sanders argues he was entitled to jury instructions on involuntary manslaughter (a lesser-included offense of murder) and voluntary manslaughter (an inferior degree of murder) and that denying those instructions violated his due process rights under the Fourteenth Amendment. (ECF #1-2 at PageID 20, 27). Moreover, Mr. Sanders alleges: "The Court of Appeals abused its discretion when it failed to find that [Mr. Sanders] was entitled to a lesser-included offense instruction." (ECF #1 at PageID 5). This statement emphasizes the state-law nature of Mr. Sanders's claim and so denial of the two jury instructions does not rise to a level of constitutional violation that might justify federal habeas relief.

*Involuntary Manslaughter.* Mr. Sanders's argument about the jury not being instructed on the lesser-included offense of involuntary manslaughter is not cognizable in federal habeas corpus

review. The United States Supreme Court has held that due process is violated when a court fails to instruct on a lesser included offense supported by the evidence in a capital case. *See Beck v. Alabama*, 447 U.S. 625, 627 (1980). It has not so held in noncapital cases. *Id.* at 638 n.14. The Sixth Circuit has further held that, because *Beck* was a challenge based on the Eighth Amendment, the Constitution does not require a lesser-included offense instruction in non-capital cases. *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97) (6th Cir. 1990) (en banc)). Consequently, failing to instruct the jury on lesser included offenses in noncapital cases is not such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *Scott v. Elo* 302 F.3d 598, 606 (6th Cir. 2002); *see also Hill v. United States*, 368 U.S. 424, 428 (1962). Because Mr. Sanders's case is non-capital, failing to instruct the jury on lesser-included offenses must be a fundamental defect that inherently results in a miscarriage of justice to be cognizable on federal habeas review. It is not.

Mr. Sanders argues he was entitled to a jury instruction on the felony-murder version of involuntary manslaughter under Ohio Revised Code § 2903.04, a lesser-included offense of the charged offense of murder under § 2903.02. To be entitled to an instruction on the lesser-included offense of involuntary manslaughter, Mr. Sanders must show a jury could reasonably find him not guilty of murder but could reasonably convict him of involuntary manslaughter. *State v. Deanda*, 989 N.E.2d 986, 988 (Ohio 2013).

Revised Code § 2903.04(A) sets forth the elements of the felony-murder version of involuntary manslaughter as, among other things, "[n]o person shall cause the death of another . . . as a proximate result of the offender's committing or attempting to commit a felony." But

§ 2903.02(B), which establishes the essential elements of murder, sets forth a heightened felony-murder offense for certain felonies. That section prohibits causing the death of another as a proximate result of the offender's committing or attempting to commit "an offense of violence that is a felony of the first or second degree and is not a violation of section 2903.03 or 2903.04 of the Revised Code." *See* Ohio Rev. Code § 2903.02(B). Thus, for deaths caused as a proximate result of the offender's commission of a first-degree or second-degree offense of violence, murder under § 2903.02(B) is the proper charge.

The Revised Code defines an "offense of violence" as an enumerated list of offenses. *See* Ohio Rev. Code § 2901.01(A)(9). That list includes both of the predicate felonies Mr. Sanders was charged with committing: felonious assault, in violation of Revised Code § 2903.11, and kidnapping, in violation of § 2905.01. Thus, Mr. Sanders would not be entitled to an instruction on involuntary manslaughter because felonious assault under § 2903.11 is a second-degree felony and kidnapping under § 2905.01 is a first-degree felony, and both offenses are listed as offenses of violence under § 2901.01(A)(9). As such, a jury could not reasonably find Mr. Sanders not guilty of murder and convict him of involuntary manslaughter because involuntary manslaughter would not be an appropriate charge. Consequently, failing to instruct the jury on involuntary manslaughter was not a fundamental defect as inherently results in a miscarriage of justice, but a correct application of state law.

*Voluntary Manslaughter.* Mr. Sanders's argument about the jury not being instructed on voluntary manslaughter is also not cognizable for federal habeas relief. To be entitled to an instruction on voluntary manslaughter, Mr. Sanders must show that a jury could reasonably find him not guilty of murder and convict him of voluntary manslaughter. *Deanda*, 989 N.E.2d at 988.

14

Ohio law does not mandate a voluntary manslaughter instruction in every murder prosecution. *State v. Shane*, 590 N.E.2d 272 (Ohio 1992).

Revised Code § 2903.03(A) sets forth the offense of voluntary manslaughter as "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." Fear for one's own personal safety or the safety of another is not a "sudden fit of passion" or "rage" required for voluntary manslaughter. *State v. Mack*, 694 N.E.2d 1328, 1331 (Ohio 1998) ("Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute a sudden passion or fit of rage."); *see also State v. Thompson*, No. 92AP-1124, 1993 WL 51114, at *2 (Ohio Ct. App. Feb. 23, 1993) ("Self-defense on the one hand requires a showing of fear, whereas voluntary manslaughter requires rage.").

Mr. Sanders argues he acted off sudden provocation to save his friend Eryc Higgins from Josh Weatherspoon, who at the time was choking Mr. Higgins. (ECF #1-2 at PageID 26-27). As Mr. Sanders puts it, he "acted in a sudden passion, brought on by the provocation that Higgins was on the verge of being killed and that Weatherspoon was known to have and carry guns." (*Id.* at PageID 27). This is fear for the life of Mr. Higgins, not a sudden fit of passion or rage, and cannot support a conviction for voluntary manslaughter. Because Mr. Sanders was afraid and not under a sudden fit of passion or rage, a jury could not reasonably find Mr. Sanders not guilty of murder and convict him of voluntary manslaughter as it would not be an appropriate charge. Consequently, the failure to instruct the jury on involuntary manslaughter was not a fundamental defect as inherently results in a miscarriage of justice, but a correct application of state law.

15

Thus, even if Mr. Sanders's petition was not time-barred, his claim for federal habeas relief is not cognizable because he asserts state-law error and has not demonstrated the alleged jury instruction violated his due process rights. Consequently, if not time-barred, I recommend the District Court **DISMISS** the petition as non-cognizable.

CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether (i) the petition states a valid claim of the denial of a constitutional right and (ii) the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Sanders has made no substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are valid claims of the denial of constitutional rights. Therefore, I recommend the District Court not grant Mr. Sanders a COA.

16

## CONCLUSION AND RECOMMENDATION

Mr. Sanders filed his federal habeas petition more than a year after the one-year statute of limitations expired. He has not shown entitlement to equitable tolling, either by showing reasonable diligence in the pursuit of his claims and the existence of an extraordinary circumstance that prevented his timely filing or by supporting a credible claim of actual innocence with reliable evidence strong enough to undermine the Court's confidence in the outcome of the trial. Even if his petition was timely, its sole ground for relief is not cognizable in federal habeas review. For these reasons, I recommend the District Court **DISMISS** Mr. Sanders's habeas petition.

Dated: May 15, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl,* **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.,* **932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'"** *Overholt v. Green,* **No. 1:17-CV-00186, 2018**

WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).